IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA CONNEARNEY., *Plaintiff,* v. MAIN LINE HOSPITALS, INC., et al., *Defendants.* | CIVIL ACTION NO. 15-02730 |

**PAPPERT, J.**                                                                                   **November 4, 2016**

### MEMORANDUM

Christina Connearney sued her former supervisor and employer alleging, *inter alia*, claims of disparate treatment and hostile work environment in violation of the Age Discrimination in Employment Act ("ADEA").[1] On August 22, 2016 Defendants moved for summary judgment on all claims. (ECF No. 40.) Connearney responded on September 20, and attached an eighty-four-paragraph declaration in support of that response. (ECF Nos. 49 & 50-2.) Defendants then moved to strike certain aspects of Connearney's Declaration under the "sham affidavit" doctrine and on the grounds that Connearney lacked the requisite personal knowledge to make certain statements in the Declaration. (ECF No. 55.) Before the Court is Defendants' Motion to Strike Paragraphs 8, 9, 13, 16, 20, 24, 35, 40, 42, 56, 59, 70, 71, 80, 81, 82 and 83 of the Declaration.[2]

---

[1] The Court provided a detailed recitation of the facts in its decision granting in part and denying in part Defendants' Motion for Summary Judgment. *See Connearney v. Main Line Hosps., Inc.*, No. 15-2730, 2016 WL 6440371, at *1–3 (E.D. Pa. Oct. 28, 2016).

[2] At Oral Argument, Defendants abandoned their challenge to certain paragraphs of the Declaration. (ECF No. 69.) The Defendants now challenge Paragraphs 8, 9, 13, 20, 24, 40, 59, 71, 80, 81, 82, 83 of the Declaration. *See* (*Id.*)

1

The Court has already ruled on the Motion for Summary Judgment and indicated in its opinion that it did not rely on Connearney's Declaration in any material respect. *Connearney v. Main Line Hosps., Inc.*, No. 15-2730, 2016 WL 6440371, at *7 n.8 (E.D. Pa. Oct. 28, 2016). Connearney subsequently filed a Motion for Reconsideration of the Court's summary judgment decision. (ECF No. 89.) As the basis for that motion, Connearney relies on Paragraph 40 of her Declaration, where she contends that during her September 4, 2014 meeting with Iacobacci, Cusick and Papa, she informed them that Hogan said "she wrote up people three times to get rid of the older employees and otherwise intimidate them into transferring." (Connearney Decl. ¶ 40.) Connearney contends that this statement was "sufficient evidence to put defendants Papa, Cusick and Iacobacci on notice of Plaintiff's claim that Ms. Hogan was taking discriminatory, age-based actions against Plaintiff and others," (Pl.'s Mot. for Recons. of Summ. J., at 1), and therefore the Court should reconsider its decision granting summary judgment on Connearney's aiding and abetting claim against Defendants Margie Iacobacci, Fran Cusick and Greg Papa.

For the following reasons, Defendants' Motion to Strike is granted with respect to Paragraph 40 of the Declaration. The Motion, as it pertains to Paragraphs 8, 9, 13, 16, 20, 24, 59, 71, 80, 81, 82 and 83, is denied as moot.

## I.

Federal Rule of Civil Procedure 56(c) allows the use of affidavits in connection with a summary judgment motion when an affidavit is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant is competent to testify on the matters stated." All affidavits must be submitted in good faith. Fed. R. Civ. P. 56(g).

Defendants contend that Paragraph 40 of Connearney's Declaration should be stricken as a "sham affidavit." (Defs.' Mot. to Strike Decl. ("Defs.' Mot."), at 9–10.) While a party may

supplement the record at summary judgment with affidavits, the Court may disregard affidavits that contradict the record or materially alter the story told by discovery. *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). "The . . . affidavit need not directly contradict the earlier deposition testimony if there are other reasons to doubt its veracity, such as its inclusion of eleventh-hour revelations that could have easily been discovered earlier." *Cellucci v. RBS Citizens, N.A.*, 987 F. Supp. 2d 578, 583 n.2 (E.D. Pa. 2013) (citing *Jiminez*, 503 F.3d at 254–55). This type of sham affidavit indicates "that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." *Jiminez*, 503 F.3d at 253. Because sham affidavits vary from earlier deposition testimony, "no reasonable jury could rely on [them] to find for the nonmovant." *Id.*

Not every contradictory affidavit is a sham, however. *See Baer v. Chase*, 392 F.3d 609, 624–24 (3d Cir. 2004) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (3d Cir. 1980)). In determining whether a contradictory affidavit is a sham, the Court will consider whether the record establishes that the affiant was "understandably mistaken, confused, or not in possession of all the facts during the previous deposition." *See id.* (quoting *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991)). If the party offering the affidavit fails to explain the contradiction between the affidavit and prior deposition, the Court will disregard the affidavit. *See id.*

**II.**

Paragraph 40 of Connearney's Declaration states:

> During the meeting, I thanked all of them for the opportunity to voice my concerns. I told them I needed to blow the whistle and bring the problem of ongoing abuse by Hogan to their attention. I was the only one with the guts, experience, and seniority left to come forward and that people were encouraging me to go to the EEOC. I reminded them that HR already knew about this problem from other complaints, and that Mr. Clifford, who I talked to a year ago, was

>intimidated by Hogan as well.  I shared how she told me she wrote up people three times *to get rid of the older employees and otherwise intimidate them into transferring.*  I also told them about Hogan's "list" she maintained of people she wanted to "rotate out of here."  I told them I believed they were a good employer and should investigate the issues and why everybody was leaving.  I also said that I did not want to be put in a room alone with Hogan anymore because I was tired and fearful of the harassment.  I asked if they could transfer me to another hospital in the MLH system. I told them I had tried to seek counseling through the Employee Health program and their FirstCall hotline, but was unsuccessful since I was told not to come to my appointment and FirstCall did not call me back until later.  I told them that I was strong and capable of doing my job, but they needed to take the years of complaints seriously and investigate.

(Connearney Decl. ¶ 40.)

The specific reference to "older employees" differs materially from Connearney's deposition testimony and other portions of the record.  Connearney never discusses the age of the employees in her deposition.  She testified that she "tried to tell Margie Iacobacci, Fran Cusick, and Greg Papa" about "the truth on everything that happened," (Connearney Dep. I, at 311:22–312:1, ECF No. 50-9), but never mentions discussing Hogan's treatment of older employees.  Connearney has also characterized the meeting as one to "challenge [an] improper write-up" from Hogan and said that she "discussed Defendant Hogan's actions in writing up *employees* three times in order to 'roll them out the door.'"  (Interrog. Resps. 3.e & 4.e, ECF No. 39-43.)  Connearney also testified at her deposition that she called "Bill Clifford in HR regarding Kathie Hogan's *bullying tactics*."  (*Id.* at 325:12–14.)  Connearney did not testify that she informed Defendants that Hogan sought to "get rid of *older employees*."

Connearney's deposition testimony is consistent with the record evidence regarding her complaints about Hogan: Connearney complained to Clifford and Papa by letter and emails regarding Hogan's alleged harassment and mistreatment of her and her coworkers—there too her complaints were limited to those subjects, with no mention of age discrimination. *See* (Pl.'s

4

Counter-Statement of Material Facts, exs. DD & EE, ECF No. 50-26); *see also Connearney*, 2016 WL 6440371, at *9–10.

Connearney's Declaration, submitted for the specific purposes of defeating summary judgment, purports to tell a materially different version of the September 4, 2014 meeting. Paragraph 40 does not simply clarify an ambiguity in Connearney's prior testimony, it introduces a material change that has legal significance to this case.

Connearney contends that Paragraph 40 does not necessarily conflict with her deposition testimony. Such direct, clear conflict is not required where, as here, the affidavit includes "'eleventh-hour revelations' that could have easily been discovered earlier." *Cellucci*, 987 F. Supp. 2d at 583 (citing *Jiminez*, 503 F.3d at 254–55). Nothing in the record or the parties' briefs suggests Connearney was "understandably mistaken, confused, or not in possession of all the facts during the previous deposition." *See Jiminez,* 503 F.3d at 254 (quoting *Hackman*, 932 F.2d at 241). Because Connearney fails to provide any explanation for this eleventh-hour revelation—which surely could have been discovered or pleaded earlier, *compare* (Am. Compl., ¶ 59), *and* (Connearney Decl. ¶ 40)—this portion of her declaration is stricken as a sham affidavit.[3]

### III.

Defendants also object to Paragraphs 8, 9, 13, 20, 24, 59, 71, 80, 81, 82 and 83 of Connearney's Declaration. As the Court has already ruled on their motion for summary judgment, the motion to strike as it pertains to these paragraphs is denied as moot.

---

[3] To the extent that Connearney contends Paragraph 40 is consistent with her emails to Papa and Clifford, the Court already held at summary judgment that the emails did not put Defendants' on notice of her claims of age discrimination. *See Connearney*, 2016 WL 6440371, at *9–10.

BY THE COURT:


***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.