IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA K. CONNEARNEY, | |
| *Plaintiff*, | |
| v. | CIVIL ACTION<br>No. 15-02730 |
| MAIN LINE HOSPITALS, INC. *et al.*, | |
| *Defendants*. | |

**PAPPERT, J.**                                                                                                                 November 4, 2016

<u>**MEMORANDUM**</u>

Christina Connearney sued her former supervisor and employer alleging, *inter alia*, claims of disparate treatment and hostile work environment in violation of the Age Discrimination in Employment Act (ADEA).[1] Before the Court are various motions in limine filed by both sides. The Court must evaluate the admissibility of evidence with respect to those claims which remain for the jurors: principally the ADEA claims and aiding and abetting age discrimination under the Pennsylvania Human Rights Act (PHRA).[2]

To establish a *prima facie* claim of disparate treatment under the ADEA, Connearney must show: (1) she is forty years of age or older; (2) Defendants took an adverse employment action against her; (3) she was qualified for the position; and (4) she was replaced by someone sufficiently younger to support an inference of discriminatory animus. *See Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). To establish a *prima facie* case of a hostile work environment due to age, an employee must prove: (1) she suffered intentional discrimination

---

[1]     The Court has provided a detailed recitation of the facts in its decision granting in part and denying in part Defendants' Motion for Summary Judgment. *See Connearney v. Main Line Hosps., Inc.*, No. 15-2730, 2016 WL 6440371, *1–3 (E.D. Pa. Oct. 28, 2016).

[2]     Connearney's claim against Defendant Kathleen Hogan for assault under Pennsylvania common law also survived summary judgment but is not relevant to the proposed testimony in question.

because of her age; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same age; and (5) the existence of *respondeat superior* liability. *See Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

I.      **Plaintiff's Motion to Exclude Plaintiff's Family Psychiatric History**

Connearney seeks to prohibit any questions, testimony, exhibits, evidence or arguments related to her mother's psychiatric history. (Pl.'s Mot., ECF No. 59, at 2.) As part of her claim, Connearney alleges she has suffered emotional distress and severe anxiety as a result of her interactions with Hogan. On November 30, 2014 Connearney went to Bryn Mawr Hospital to receive treatment for chest pains. The medical records from that consultation contain a section titled "Family Psychiatric History," in which it was noted that "[t]he patient's mother had a mental breakdown in her 30's. She had psychosis." (Defs.' Resp., ECF No. 72, at 2.) At Connearney's deposition, defense counsel asked her about the entry and Connearney testified that her mother had a mental breakdown in her thirties and experienced psychosis when her father left her mother and married his secretary. (Connearney Dep. I, at 330:2–9.)

Connearney seeks to preclude evidence relating to her mother's mental health history under Rule 403, which states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Connearney argues that the evidence is not relevant, and even if it was, its probative value is outweighed by its danger of unfair prejudice. Connearney contends that "[t]he only purpose of such evidence would be to demean Plaintiff's character and suggest to the jury a decision on an improper basis." (Pl.'s Mot., at 3.) Connearney fears the jury will improperly infer that "because of her mother's history that maybe

she's susceptible to such mental distress and breakdowns of her own." (Tr. of Oral Arg., ECF No. 98, at 79:20–23.) Connearney contends this is problematic both because it is an improper basis for evaluating any emotional distress award and because expert testimony would then be needed "as to whether her mother's psychiatric history might lend credence to the argument that she might be more susceptible to such breakdowns." (*Id.* at 80:2–4.)

In their motion, Defendants argue that Connearney's family psychiatric history "was clearly relevant to both Connearney and her medical providers when she sought psychiatric care, and it thus is relevant to her alleged emotional distress claims and claim that she suffered from a disability as a result of Defendants' conduct, or it would not have been included in her medical records." (Defs.' Resp., at 3.) At oral argument, Defendants claimed that the evidence of Connearney's mother's psychiatric breakdown is relevant to the issue of causation, *i.e.*, whether Connearney suffered from a disability as a result of Defendants' conduct. (Tr. of Oral Arg., at 83:25–84:1.)

After oral argument, Defendants supplemented their position by pointing out that Connearney's expert, Dr. Gerald Cooke, Ph.D., himself references in his expert report the nervous breakdown that Connearney's mother experienced after separating from her husband.[3] (Letter from Defense Counsel, ECF No. 99.) The Defendants also point out that "Ms. Connearney's medical records indicate she was experiencing marital issues during the relevant time frame, and Dr. Cooke's report then goes on to discuss the fact that Ms. Connearney and her husband were separated and have recently divorced." (*Id.*) In essence, the Defendants' argument is this: Connearney's mother had a psychotic breakdown many decades ago because her husband

---

[3] In his report, Dr. Cooke provides an overview of Connearney's history based on the records he was provided. In the relevant portion, he states: "Regarding her family, Ms. Connearney indicates that her parents were divorced when she was around age eleven and her father remarried. Her mother had a nervous breakdown after her father left." (Ex. 164, at 7.)

3

left her. Since Connearney herself, many decades after her mother, also had marital problems, Connearney's emotional distress (like her mother's) must be attributable to her marital woes, not anything the Defendants did.

The fact that Dr. Cooke briefly references her mother's breakdown in his report does not relieve the Court of its obligation to assess that evidence's probative value against its potential to unfairly prejudice Connearney, confuse the issues or mislead the jury. Evidence that Connearney's mother experienced a psychiatric breakdown decades ago has little to no probative value on the question of whether Hogan or any other defendant in this case caused Connearney's emotional distress. Defendants' arguments for the inclusion of Connearney's mother's mental health history are too remote and attenuated and could confuse or mislead the jury. Moreover, the risk of unfair prejudice to Connearney is very real—the jurors could be tempted to simply conclude that Connearney was "mentally ill" anyway and that her problems at work were unrelated to her "pre-existing" problems. Because the danger of unfair prejudice outweighs the probative value of the evidence, it is inadmissible under Rule 403.

## II. Plaintiff's Motion as to the Confidentiality and Non-Disparagement Clauses in Settlement Agreements

Several former employees that previously settled disputes with Defendants entered into confidentiality or non-disparagement agreements with them. Connearney, fearing that witnesses who are party to such agreements may be unsure of whether they can testify truthfully at trial, wants the Court to instruct the witnesses that any confidentiality or non-disparagement clause in such an agreement is not enforceable in the face of legal proceedings and that they are required to testify truthfully. (Pl.'s Mot., ECF No. 60, at 3.) Defendants point out that the agreements themselves state that "[n]othing in this paragraph shall be deemed to prevent either of the parties from providing information in response to an investigation by a duly authorized governmental

agency or in response to legal proceedings." (Defs.' Resp., ECF No. 72, at 3.) Because the agreements at issue clearly state that they do not prevent parties from testifying truthfully in legal proceedings, it is not necessary for the Court to provide independent instructions to the witnesses to the same effect. The motion is denied as moot.

### III. Defendants' Motion to Preclude Evidence of Discipline of Other Employees in the Protected Class

Defendants contend that evidence of discipline administered to other hospital employees in Connearney's protected age class is not probative of any material issue in the case, and any probative value is substantially outweighed by the danger of unfair prejudice. (Defs.' Mot., ECF No. 61, at 2–4.) Connearney contends that evidence that Defendants previously discriminated against others in the protected class is relevant to show pretext. (Pl.'s Resp., ECF No. 75, at 2.) At oral argument, Defendants agreed that these other employees could testify about being disciplined by Hogan but argued that the employees should not be permitted to opine as to the fairness of the discipline administered or their beliefs that disciplinary action was taken against them *because* of their ages. (Tr. of Oral Arg., at 101:14–102:22.)

As an initial matter, the Court must decide whether the testimony is relevant under Rule 401. To prove that an invidious discriminatory reason was more likely than not the motivating factor for the adverse action against the plaintiff, the Third Circuit has stated that a plaintiff may point to evidence that the employer has previously discriminated against the plaintiff, that the employer has previously discriminated against others in the plaintiff's protected class or that the employer has treated more favorably similarly situated persons not within the protected class. *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998). Evidence of an employer's past discriminatory or retaliatory behavior toward other employees in the plaintiff's protected class—so-called "me too" testimony—may, depending on the circumstances, be relevant to whether an

5

employer discriminated or retaliated against the plaintiff. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013); *Barnett v. PA Consulting Grp., Inc.*, 35 F.Supp.3d 11, 22 (D.D.C. 2014).

"[S]o-called 'me too' evidence in an employment discrimination case is neither *per se* admissible nor *per se* inadmissible." *Mandel*, 706 F.3d 157 at 167 (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008)). Rather, the question of whether such evidence is relevant "is fact-based and depends on several factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.*; *see also Barnett*, 35 F.Supp.3d at 22 ("Among the factors relevant to the determination as to whether or not to allow the introduction of 'me too' evidence in employment discrimination cases are whether the alleged discriminatory behavior by the employer is close in time to the events at issue in this case; whether the same decision-makers were involved; whether the witness and the plaintiff were treated in a similar manner; and whether the witness and the plaintiff were otherwise similarly situated.").

Here, Connearney seeks to introduce "me too" evidence from other nurses who, like Connearney, were within the protected age group, worked under supervisor Hogan, and contend that Hogan took unwarranted and/or heavy-handed disciplinary action against them under circumstances that did not justify such discipline because of their ages. *See* (Pl.'s Resp., at 3). The evidence is substantially closely-related to Connearney's circumstances and theory of the case so as to render it relevant under Rule 401.

The next issue is the permissible scope of such "me too" evidence. Defendants contend that the employees should not be permitted to opine as to the fairness of the discipline administered or their belief that disciplinary action was taken against them *because* of their age.

Under Rule 701, opinion testimony by lay witnesses is permissible if it is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701.

In applying Rule 701(b) to testimony regarding an employer's motivations, courts have held that a "witness's opinion as to the defendant's [ultimate motivations] will often not be helpful within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant was motivated by an impermissible animus." *Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000) (collecting cases). Here, the jury will hear testimony about the same statements or behavior by Hogan from which the witnesses drew the conclusion that Hogan targeted them because of their age. It is therefore not necessary for witnesses to state their ultimate conclusions regarding Hogan's motivations because "a jury can draw its own conclusions from observed events or communications that can be adequately described to it." *Id.* (citation omitted); *see also United States v. Fulton*, No. 15-1513, __ F.3d __, 2016 WL 4978360, at *5–6 (3d Cir. Sept. 19, 2016) ("We do not understand how a witness' subjective belief that a defendant 'must have known' [of the object of a conspiracy] is helpful to a factfinder that has before it the very circumstantial evidence upon which the subjective opinion is based. Stated another way, the witness's testimony was not helpful—and thus inadmissible under Rule 701—because the jury was in just as good a position as the witness to infer what Anchors 'must have known.'" (citation omitted)); *McNulty v. Citadel Broad. Co.*, 58 F. App'x 556, 564 (3d Cir. 2003) (citing *Hester* and holding that lay witness testimony is not necessary when it goes to the ultimate issue and distracts jurors from the task of drawing an independent conclusion). The Defendants' motion is accordingly

granted in part with respect to opinion testimony from employees within the protected class about Hogan's motivations for disciplining them.

**IV.    Defendants' Motion to Preclude Evidence and Arguments Relating to Main Line Hospital's e-Feedback System**

Defendants seek to preclude Connearney from introducing documents, testimony or argument relating to Main Line Hospital's e-Feedback system, an online portal through which employees can submit anonymous feedback or complaints. (Defs.' Mot., ECF No. 62.) Defendants argue that the complaints are inadmissible under Rules 802 and 901 because they are anonymous and unauthenticated hearsay and Under Rule 403 because they are remote in time (the complaints date back to 2011, three years before Connearney felt she was being targeted because of her age) and more prejudicial than probative. (*Id.* at 1.) Connearney contends that the complaints are relevant to the issue of whether Defendants were put on notice that a hostile work environment existed. (Pl.'s Resp., ECF No. 71, at 4.)

None of the complaints mention Hogan by name and, more importantly, none of them mention or assert that the author has experienced any kind of discrimination based on age. The issue is *not* whether Defendants had notice that the hospital was a hostile work environment generally (*i.e.* Hogan was mean to employees) but whether it had notice that the hospital was a hostile work environment because of age discrimination (*i.e.* Hogan was mean to employees because of their age). Because the complaints are not relevant to that issue,[4] they are inadmissible under Rule 401.[5] Moreover, the e-feedback complaints lack probative value because they are remote in time and, more importantly, because it is impossible to determine

---

[4]    The issue of notice is no longer in play since the Court found that Defendants were not put on notice at the summary judgment stage. *See Connearney*, 2016 WL 6440371, at *14.

[5]    Rule 401 states that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401.

who sent them. Thus, even if the evidence were relevant to a material issue, it would be inadmissible under Rule 403.

## V. Defendants' Motion to Preclude Connearney from Referring to Various Actions as "Adverse Employment Actions"

Defendants seek to preclude Connearney from referring to her removal from an unpaid volunteer position as a safety coach and her purportedly voluntary move to staff nurse as adverse employment actions. (Defs.' Mot., ECF No. 63, at 3.) It will be the jury's prerogative to determine whether these actions constituted adverse employment actions and they will receive appropriate instructions regarding the legal standard at the close of the evidence. Moreover, Defendants will have the opportunity to cross-examine Connearney about any such characterizations and/or effectively raise objections regarding characterizations of these actions at trial. The motion is accordingly denied as moot.

## VI. Defendants' Motion to Preclude Evidence of Discipline of Employees Outside the Protected Class

Defendants seek to preclude Connearney from introducing comparator evidence that employees outside of the protected class who also committed offenses were not disciplined as harshly as Connearney. (Defs.' Mot., ECF No. 64, at 1.) Defendants seek to preclude evidence of three incidents. The first involved a nurse who allegedly did not undress a patient and missed a condition.[6] (*Id.* at 4.) Connearney claims that this patient later died. (Pl.'s Resp., ECF No. 70, at 3.) In the second incident, a nurse allegedly misread a medication order and gave a patient the wrong medication. (Defs.' Mot., at 4.) Connearney states that the employee committed what Hogan classified as "two major drug errors," the second of which caused a patient to stop breathing. (Pl.'s Resp., at 3.) She points out that after each error, this employee was merely given counseling. (*Id.*) The third incident involved a nurse who allegedly used profanity in an

---

6     The Court does not have information about the specific condition involved.

argument with a physician.  (*Id.*)  All of these employees were given counseling.  Connearney, by contrast, was fired for intentionally falsifying a medical record.

A similarly situated employee need not be identically situated, but the comparator must be similar to the plaintiff in all relevant aspects.  *Abdul-Latif v. Cty. of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014) (citing *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881–82 (3d Cir. 2011)).  "A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in."  *Wilcher*, 441 F. App'x at 882.  In *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220 (3d Cir. 2009), the Third Circuit Court of Appeals stated that "[w]hich factors are relevant is determined by the context of each case, but often includes a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'"  *Id.* at 223 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000)).  The court went on to state, "[a]gain, while 'similarly situated' does not mean identically situated, purported comparators must have committed offenses of 'comparable seriousness.'"  *Id.* (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)).

Whether comparators are similarly situated is generally a question of fact for the jury.  *Abdul-Latif*, 990 F. Supp. 2d at 526; *see also George v. Leavitt*, 407 F.3d 405, 414 (D.C. Cir. 2005); *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).  However, if no reasonable jury would be able to find that the plaintiff and the comparator were similarly situated, the Court may decide, as a matter of

law, that the two are not. *See, e.g.*, *McDonald*, 371 F.3d at 1002; *Abdul-Latif*, 990 F. Supp. 2d at 526; *Burton v. D.C.*, 153 F. Supp. 3d 13, 67 (D.D.C. 2015).

Defendants emphasize the Third Circuit's language in *Opsatnik* requiring "similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them" as well as the court's statement in other cases that the "focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 359 (3d Cir. 1999) (quoting *Simpson*, 142 F.3d at 647). Defendants contend that where the alleged comparator did not engage in the same actions or type of misconduct, he is not similarly situated as a matter of law. (Defs.' Mot., at 2.) Here, they argue that none of the employees involved in the other three incidents intentionally falsified a medical record or engaged in conduct remotely similar to Connearney's. (*Id.*)

Connearney's argument relies exclusively on the concept of comparable seriousness. *See Opsatnik*, 335 F. App'x at 223 ("while 'similarly situated' does not mean identically situated, purported comparators must have committed offenses of 'comparable seriousness'"). Emphasizing this requirement, Connearney argues that the evidence is admissible because the comparators committed major offenses that were at least as serious if not more serious than Connearney's since those employees made life-threatening errors whereas Connearney did not. (Pl.'s Resp., at 3.)

While Connearney's position has some validity, it does not address Defendants' argument that the standard requires not only that the offenses be of comparable seriousness, but also that the type of misconduct involved, *i.e.* the actual action taken by the comparator, be the same or similar to the conduct engaged in by the plaintiff. The standard articulated by the Third Circuit

11

contemplates *both* that the comparator engaged in the same or similar behavior or actions *and* that his offense was of comparable seriousness to that of the plaintiff.

In *Bluebeard's Castle Hotel v. Gov't of Virgin Islands, Dep't of Labor*, 786 F.2d 168, 172 (3d Cir. 1986), the plaintiff was terminated for yelling obscenities at, and threatening to harm, his supervisor. To support his claim of intentional discrimination, he cited comparator evidence that another employee was merely given a warning letter for using abusive language and talking back to his supervisor in a rude manner. *Id.* at 170–71. The Court of Appeals found the evidence insufficient to support a finding of discrimination because there were not enough facts presented regarding the comparator's behavior to determine whether the incidents were sufficiently similar, such as whether the other employee had used obscenities when he spoke to his supervisor or whether he had threatened his supervisor with harm as had plaintiff. *Id.* at 172; *see also Opsatnik*, 335 F. App'x at 223 (rejecting the plaintiff's argument that any 'major' violation under the employer's disciplinary framework is automatically comparable to any other 'major' violation and refusing to permit an employee fired for operating a train at excessive speeds to rely on comparator evidence involving non-operational offenses, such as violations of the attendance policy or of the drug and alcohol abuse policy).

Notwithstanding the alleged serious consequences of the other nurses' conduct, the behavior engaged in by those nurses—failing to make a patient undress, negligently misreading a medication order and administering the wrong medication to a patient, and using profanity in an argument with a physician—materially differs from the conduct for which Connearney was fired—*intentionally* falsifying medical records. The factfinder could not reasonably draw an inference of discrimination from Defendants' decision to treat these incidents differently from a

12

disciplinary standpoint.[7]  Because the other employees are not similarly situated to Connearney as a matter of law, evidence of the discipline they received is not relevant to or probative of Defendants' reasons for firing Connearney.

### VII. Defendants' Motion to Preclude Letters of Recommendation

Defendants seek to preclude Connearney from introducing evidence or argument regarding letters of recommendation written on her behalf by doctors, nurses, previous employers and others asserting that Connearney was a good nurse and employee. (Defs.' Mot., ECF No. 65, at 1.) Connearney collected the letters before the November 21 incident for which she was ultimately fired but gave them to Human Resources during the course of its investigation into that incident. (Pl.'s Resp., ECF No. 76, at 1.)

As an initial matter, Defendants contend that the letters are hearsay. Defendants also contend that because Connearney was terminated for intentional falsification of a medical record rather than poor performance or general incompetence, Connearney's performance history is irrelevant, making the letters irrelevant as well. (Defs.' Mot., at 2–3.) Connearney believes that the letters of recommendation show her good work record and are relevant to the issue of whether Defendants acted reasonably in taking action against her based on the word of

---

[7] *See, e.g., Barney v. Consol. Edison Co. of N.Y.*, 391 F. App'x 993, 996 (2d Cir. 2010) (no reasonable jury could find that plaintiff was similarly situated to coworker where plaintiff intentionally entered false overtime data and the coworker merely failed to review plaintiff's overtime entries correctly); *Akinyemi v. Napolitano*, 347 F. App'x 604, 607 (2d Cir. 2009) ("the district court properly excluded evidence concerning the misconduct and subsequent discipline of fellow employee, Jolanta Gluba, because Gluba's negligence was not of comparable seriousness to Akinyemi's intentional misconduct"); *Rivera v. City & County of Denver*, 365 F.3d 912, 924 (10th Cir. 2004) (plaintiff's comparator evidence was insufficient because the misconduct engaged in by other employees could "be viewed as less serious than the dishonesty displayed by plaintiff"); *McNeil v. Comhar, Inc.*, No. 15-4959, 2016 WL 4366984, at *4 (E.D. Pa. Aug. 16, 2016) (accidentally administering the wrong medication to a patient is not sufficiently similar to intentionally abusing a patient); *Javery v. Lockheed Martin Corp.*, No. 14-2644, 2016 WL 1642926, at *5 (E.D. La. Apr. 26, 2016) (although the proposed comparator offense was a serious one, it was not sufficiently similar because it did not involve aspects of unethical conduct or dishonesty whereas the plaintiff's offense had); *Palamides v. Boehringer Ingelheim Pharm., Inc.*, No. 07-1696, 2011 WL 1044641, at *13 (W.D. Pa. Mar. 18, 2011) (where plaintiff had been fired for intentionally falsifying call records, evidence that other employees were not terminated for falling behind in logging calls or entering calls into the record incorrectly was insufficient because those employees had not been accused of intentional falsification); *Gardner v. Streamwood Behavioral Health Ctr.*, No. 02-4575, 2004 WL 5185551, at *5 (N.D. Ill. Sept. 30, 2004) (negligent conduct that resulted in harm to patient was not sufficiently similar to deliberate and intentional conduct that resulted in harm to patient).

Defendant Hogan. (Pl.'s Resp., at 4.) More specifically, Connearney contends that the letters "put Defendants on notice that Hogan's accusations of misconduct on the part of Plaintiff were not fact-based but were due to Hogan's discriminatory animus." (*Id.*)

Connearney was not fired for poor performance or a history thereof. She was fired for the discrete act of intentionally falsifying a medical record. It is incorrect to say that letters demonstrating Connearney's competence as a nurse would put Defendants on notice that Hogan's assertion that Connearney falsified a record was not fact-based. Moreover, where termination is based on a particular act of misconduct or a particular category of performance, evidence of good performance in other areas or in general is irrelevant: "In a case like this one, positive performance evaluations are not significant. Where the employer has given a non-discriminatory reason for firing, 'the employee's positive performance in another category is not relevant.'" *Ewell v. NBA Props.*, 94 F. Supp. 3d 612, 629 (D.N.J. 2015) (quoting *Simpson*, 142 F.3d at 647). Thus, whether or not Connearney was a good nurse or employee in general is not a material issue in this case; rather, the jury is tasked with determining if the Defendants improperly accused her of falsifying a medical record as a pretext for illegally firing Connearney because of her age. The letters are inadmissible.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.